IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 10, 2017

## RANDY WAYNE JOHNSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Carter County**
**No. 22378    Lisa D. Rice, Judge**

_____

### No. E2017-00075-CCA-R3-PC

_____

The petitioner, Randy Wayne Johnson, appeals the denial of post-conviction relief from his 2014 Carter County Criminal Court convictions of especially aggravated kidnapping and assault, for which he received a sentence of 25 years. In this appeal, the petitioner contends only that he was denied the effective assistance of counsel at trial. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Casey A. Sears II, Johnson City, Tennessee, for the appellant, Randy Wayne Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Tony Clark, District Attorney General; and Dennis Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Carter County Grand Jury charged the petitioner with one count each of felony evading arrest and aggravated assault in case number 22386 and, on the same date, charged the petitioner with one count each of especially aggravated kidnapping, aggravated assault, driving under the influence, felony evading arrest, driving on a suspended license, and simple possession in case number 22378. In case number 22386, the State dismissed the charge of felony evading arrest, and in case number 22378, the petitioner pleaded guilty to the latter four charges. The petitioner waived his right to a jury trial, and the trial court conducted a bench trial in June 2014 on the charges of especially aggravated kidnapping and the two separate counts of aggravated assault. The trial court then found the defendant guilty as charged on all three counts and sentenced

the defendant to serve 25 years. On appeal, the petitioner challenged only the sufficiency of the convicting evidence of his especially aggravated kidnapping conviction, and this court affirmed the conviction on direct appeal. *See State v. Randy Wayne Johnson*, No. E2014-01613-CCA-R3-CD (Tenn. Crim. App., Knoxville, June 12, 2015), *perm. app. denied* (Tenn. Sept. 17, 2015).

The evidence adduced at the petitioner's trial established that the victim, Brooke Thornburg, was the petitioner's girlfriend and that, on the evening of March 19, 2013, the victim and the petitioner's friend, Kevin Stover, accompanied the petitioner in the cab of his truck for a drive from Elizabethton to Jonesborough. *Id.*, slip op. at 2. Upon arriving in Jonesborough, Mr. Stover went inside a residence while the petitioner and Ms. Thornburg remained in the truck. *Id.* At some point, the petitioner dropped his cigarette and he "'yelled' at Ms. Thornburg to pick it up." *Id.* When Ms. Thornburg refused, the petitioner struck her in the face, fracturing her nose and causing profuse bleeding. *Id.* Ms. Thornburg retrieved the petitioner's cigarette, but he continued to strike her and demand that she staunch the nasal bleeding. *Id.* The petitioner threw his shirt at Ms. Thornburg, who then used it to cover her nose. *Id.* Mr. Stover then returned to the vehicle. *Id.* According to Ms. Thornburg, Mr. Stover appeared to be stunned, but he took his seat in the truck and did not involve himself in the altercation. *Id.*, slip op. at 2-3.

> [The petitioner] began driving back to Elizabethton but continued "screaming" at and hitting Ms. Thornburg. She leaned into [Mr. Stover] to avoid [the petitioner], and [Mr. Stover] told [the petitioner] to "calm down" because Ms. Thornburg was "scared." Ms. Thornburg "had bruises all over [her] ribs and down [her] face" from the [petitioner's] blows.
>
> Eventually, Ms. Thornburg surreptitiously retrieved her cell phone from her purse, dialed 911, and returned the phone to her purse. She instructed [the petitioner] to let her out of the vehicle and continued to describe their location so that the 911 dispatcher listening to the altercation through the phone would know where to send the police. She told [the petitioner] that she would not report the incident if he would let her leave. . . .
>
> Ms. Thornburg remembered [the petitioner's] threatening her several times by saying, "I'm going to slit your throat. I'm going to cut your throat and throw you out

here, bitch." The return ride from Jonesborough lasted between twenty and twenty-five minutes, and the beating "was pretty steady" the entire time.

*Id.*, slip op. at 3.

When the petitioner returned to Mr. Stover's residence in Elizabethton, Mr. Stover got out of the truck, and Ms. Thornburg attempted to get out with him. *Id.* The petitioner then grabbed Ms. Thornburg by her hair and began striking her in the face before holding a knife to her throat and telling her that "he was going to take [her] to the lake and cut [her] throat and throw [her] out." *Id.* The petitioner then drove away with Ms. Thornburg, and he encountered police officers approximately 10 minutes later. *Id.*

The petitioner led police officers on a high-speed chase for 10 to 15 minutes before eventually stopping his vehicle and apologizing to the officers, explaining that he was intoxicated. *Id.*, slip op. at 3-5. Officers noticed that Ms. Thornburg was "'bleeding profusely from her face [and] her nose'" and was "'very hysterical.'" *Id.*, slip op. at 5. Officers also noticed a "'thin long mark'" on Ms. Thornburg's neck, which she explained was the result of the petitioner's holding a knife against her throat. *Id.*, slip op. at 6. Officers later discovered a "closed folding knife on the floorboard of the driver's side of the truck." *Id.*

The petitioner admitted striking Ms. Thornburg, explaining that her flirtation with Mr. Stover was the impetus for the fight. *Id.* The petitioner, however, denied holding Ms. Thornburg against her will, and he denied using the knife to threaten Ms. Thornburg. *Id.*

On October 12, 2015, the petitioner filed, pro se, a timely petition for post-conviction relief, alleging, *inter alia*, that he was deprived of the effective assistance of counsel. Following the appointment of counsel and the amendment of the petition, the post-conviction court conducted an evidentiary hearing on September 30, 2016.

At the evidentiary hearing, the petitioner admitted that he was "guilty" of the other crimes of which he was convicted but explained that he was not guilty of especially aggravated kidnapping because he never intended to kidnap Ms. Thornburg and "[s]he could have got out at any time."

The petitioner testified that trial counsel had been appointed to represent him and that counsel had only met with him on three or four occasions during his two-year representation. The petitioner stated that he had requested that trial counsel obtain and enter into evidence the video recording from the police cruiser which purportedly

showed the petitioner's driving in excess of 70 miles per hour on a particular stretch of road. The petitioner had also requested that trial counsel call Mr. Stover as a witness, which counsel failed to do, and had asked counsel to conduct deoxyribonucleic acid ("DNA") testing on the knife found in his vehicle to prove that the petitioner had never used the knife to cut Ms. Thornburg.

On cross-examination, the petitioner admitted that, had trial counsel obtained any video recordings from police cruisers on the night in question, those videos would have shown the petitioner driving recklessly. With respect to Mr. Stover, the petitioner conceded that trial counsel had informed him that "it might not be a good idea to" call Mr. Stover as a witness, and the petitioner thought he might have told trial counsel to do "whatever he thought would be best."

Trial counsel testified that he was appointed to represent the petitioner on November 25, 2013, and that the petitioner's case went to trial the following June. Counsel recalled meeting with the petitioner four to six times to discuss his case and that he had discussed trial strategy with the petitioner. In particular, trial counsel had advised the petitioner against seeking a jury trial, believing that a jury's reaction to the 9-1-1 recording would be detrimental to the petitioner. Trial counsel testified that he had tried approximately 60 jury trials and numerous bench trials.

Trial counsel stated he had advised the petitioner against a strategy based on attacking Ms. Thornburg's credibility, explaining as follows:

> This case was one of which they have her for seven minutes and twenty seconds screaming at the top of her lungs begging for life, begging for him to stop. It's hard to have defended that part of it so it became more or less an issue of was she telling the truth about this knife? . . . As I told [the petitioner], in my view, it's obvious she's in this car, she wants to get out, he keeps driving, it's obvious he's hit her, struck her several times before this, and it's apparent, I believe she's testified that he has struck her during this time, she wants out.
>
> . . . .
>
> You know, I could have attacked her credibility but it really to me only mattered as to whether or not she's lying about the knife or not because everything else she's testifying to, you've got the 9-1-1 tape and she's got the injuries. So I

didn't see attacking her credibility was necessarily going to make much of a difference especially when she's on the stand literally, you know, physically you remember, she was physically shaking as she was testifying.

. . . .

What [the petitioner] was saying was, is that it – the whole serrated part [of the knife] would have made a difference because of this mark [on Ms. Thornburg's neck] I didn't necessarily think that was accurate. I mean, you can look at the knife, it could have made the mark on another part of the knife.

Trial counsel explained that he did not seek DNA testing because no blood was present on the knife and he "didn't think it would lead anywhere."

With respect to the cruiser video recordings, trial counsel recalled that the petitioner had requested them, but counsel did not attempt to obtain them because he believed the 9-1-1 recording painted a fair picture of what had occurred in the petitioner's vehicle. Counsel was not aware whether such video recordings from the police cruisers actually existed in this case.

When asked about Mr. Stover, trial counsel testified that, from the beginning of his representation, the petitioner had specifically instructed him not to contact Mr. Stover. Approximately two days prior to trial, the petitioner had a change of heart and asked trial counsel to call Mr. Stover as a witness. At that time, trial counsel explained that Mr. Stover had a criminal record, which would impact his credibility as a witness. Additionally, the petitioner had informed trial counsel that Mr. Stover's wife had contacted 9-1-1 after the petitioner had returned Mr. Stover to his residence on the night in question and that Mrs. Stover had informed the dispatcher that the petitioner was "beating the s[***] out of" Ms. Thornburg. As a result, trial counsel never contacted either of the Stovers.

With this evidence, the post-conviction court denied relief, finding no clear and convincing evidence that trial counsel had rendered ineffective assistance of counsel and finding specifically that "the evidence is substantial and overwhelming that trial counsel reviewed the options available to [the p]etitioner, explored discovery and met with his client regularly and discussed trial decisions." In its detailed and comprehensive 16-page order denying relief, the court also made the following findings with respect to the petitioner's specific allegations of ineffective assistance of counsel:

Trial counsel testified at the hearing that during the discovery process he never discovered any video footage from any of the cruisers involved in the pursuit and apprehension of [the p]etitioner. Further, [the p]etitioner had failed to present any such evidence during this hearing. There is nothing to indicate to the [c]ourt that this type of evidence even exists or was in existence at the time of the arrest or trial. Further, on cross examination, [the p]etitioner admitted that the video footage, had it existed, would have likely only shown the chase by police officers of [the p]etitioner's truck. There has been absolutely no proof presented to substantiate that anything on any such film footage would have shown any evidence relevant to the kidnapping charge, the only conviction at issue for purposes of this evidentiary hearing.

. . . .

[The p]etitioner testified during the evidentiary hearing that he wished for Kevin Stover to have testified at the bench trial. However, [the p]etitioner failed to provide any proof of testimony or other evidence of how Mr. Stover's testimony would have changed the outcome of the trial, or if this testimony would have been critical on the issue of the Especially Aggravated Kidnapping.

. . . .

The [c]ourt cannot speculate, guess or assume what the testimony of any witness would be or if it would even be favorable to [the p]etitioner, nor what evidence, if any, further investigation of the witness would uncover. Furthermore, [trial counsel] testified that he and [the p]etitioner discussed on more than one occasion the potential use of Mr. Stover as a witness, and up until the eve of trial, [the p]etitioner insisted he did not want to use this witness at trial. [Trial counsel] further expressed concerns about the potential impact of Mr. Stover's wife possibly being one of the 911 callers alerting the police to the assaults on the victim observed at the Stover[s'] apartment building, as well as Stover's criminal record and credibility issues. This [c]ourt FINDS that trial

counsel's decisions regarding the potential testimony of Mr. Stover at trial were informed and resulted from adequate preparation and analysis of the benefits versus the possible drawbacks of his testimony. This [c]ourt credits the testimony of [trial counsel] regarding these discussions during trial preparation. This [c]ourt further FINDS that the request of [the p]etitioner that Mr. Stover be found and served with a subpoena on the eve of trial and trial counsel's inability to do so does not rise to the level of ineffective assistance of counsel.

. . . .

The [c]ourt FINDS that trial counsel was given the opportunity to and did explore all issues concerning the knife and [its] use during the events of March 19, 2013. The testimony and credibility of each witness, including [the p]etitioner, was weighed by the [t]rial [c]ourt and it gave full weight to the State's witnesses and very little, if any to [the p]etitioner.

The [c]ourt further FINDS that the issue presented by [the p]etitioner concerning whether or not the red mark on the neck of the victim present at the time of the [p]etitioner's arrest matched the serrated edge on the knife is of little consequence on whether he actually employed the knife during the kidnapping of the victim. The [c]ourt FINDS that [the p]etitioner has failed to present any evidence that this issue, if relevant, would have resulted in a different outcome by the [t]rial [c]ourt or that the strategy used by trial counsel addressing the use of the knife was in any way deficient.

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that trial counsel performed deficiently by failing to obtain video recordings of the police pursuit, by failing to call Mr. Stover as a witness at trial, and by failing to properly investigate the knife allegedly used against the victim. The State contends that the court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of

Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's

factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record fully supports the denial of relief in this case. The petitioner failed to present Mr. Stover as a witness at the evidentiary hearing, and he failed to present any video recordings as evidence. As such, we cannot speculate what Mr. Stover might have testified to at trial or what such video recordings might have shown. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Trial counsel's decision to eschew DNA testing on the knife was based on his reasonable belief that such testing was unnecessary, given the lack of blood on the mark on Ms. Thornburg's neck and the fact that the petitioner could have held the non-serrated edge against her throat, and we will certainly not second-guess this reasonable–and advisable–trial strategy. *See Adkins*, 911 S.W.2d at 347. Given the overwhelming evidence against the petitioner, he cannot establish that, but for counsel's alleged errors, the outcome would have differed. *See Strickland*, 466 U.S. at 694. As such, we hold the petitioner has failed to prove by clear and convincing evidence any facts that demonstrate that trial counsel's representation was deficient or prejudicial.

The petitioner failed to establish that he was denied the effective assistance of counsel at trial. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE